**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. BRADLEY JACOB STANSBURY, an individual, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 17-CV-620-JED-JFJ |
| v. | ) ) | JURY TRIAL DEMANDED |
| 1. METALS USA PLATES AND SHAPES SOUTHCENTRAL, INC. d/b/a PORT CITY METAL SERVICES, a domestic for-profit corporation, | ) ) ) ) ) | ATTORNEY'S LIEN CLAIMED FOR THE FIRM |
| *Defendant*. | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Bradley Stansbury ("Plaintiff"), by and through his attorney of record Charles C. Vaught of Armstrong & Vaught, P.L.C. and hereby submits the following Complaint against Defendant Port City Metal Services ("Defendant") and hereby states and alleges as follows:

### JURISDICTION AND VENUE

1. This action arises under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301, *et seq*.

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b).

3. This Court has jurisdiction over the parties and the subject matter of this action and this action properly lies in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(1) and 38 U.S.C. § 4323(c) because Defendant maintains a place of business in this district.

4. Declaratory and equitable relief are sought in this matter pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

5. Actual and liquidated damages are sought in the matter pursuant to 38 U.S.C. § 4323(d).

6. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and 38 U.S.C. § 4323(h).

## PARTIES

7. Plaintiff was, at all times hereinafter mentioned, domiciled in and a citizen of the State of Oklahoma and is a member of the U.S. Armed Services.

8. Defendant was and is now existing under the laws of a state other than Oklahoma and maintains a place of business in Tulsa, Tulsa County, Oklahoma.

## OPERATIVE FACTS

9. Plaintiff was hired by Defendant as a temporary employee on January 6, 2017.

10. On January 26, 2017, Plaintiff received a telephone call from his Staff Sergeant, who inquired as to whether Plaintiff would be able to "deploy soon." Following the telephone call, Plaintiff uploaded a Facebook post regarding his conversation with his Sergeant.

11. On January 27, 2017, William Wallace, Plaintiff's co-worker, saw the post on Facebook and subsequently informed Mickey Chasteen, Shop Supervisor, of it.

12. Brent LNU, Machine Bay Supervisor, advised Plaintiff to tell Mr. Chasteen about the phone call. Plaintiff believed that the deployment could fall through and, concerned that it could impact his employment, decided to not discuss it with Mr. Chasteen.

13. After hearing about the potential deployment from Plaintiff's co-workers, Mr. Chasteen approached Plaintiff. Plaintiff advised Mr. Chasteen that deployment was possible.

14. During February of 2017, Plaintiff was approached by a Prior Service Recruiter for the Marine Corps about switching to Active Reserve. Plaintiff agreed to go in for one weekend to see if it fit him. Plaintiff requested the time off for this and Mr. Chasteen approved it.

15. Upon his return, Mr. Chasteen inquired as to whether Plaintiff received further news about deployment. Plaintiff informed Mr. Chasteen that he had not.

16. Plaintiff decided to not join the Active Reserves. Instead, Plaintiff contacted a National Guard Recruiter about joining them for future deployment and benefits.

17. One day, while at lunch with co-workers, Plaintiff received a phone call from the National Guard Recruiter informing Plaintiff that his enlistment papers were ready to sign. Plaintiff hung up the phone and said to his co-workers, "looks like I'm deploying around May."

18. Upon returning from lunch, Mr. Chasteen confronted Plaintiff about his conversation with the National Guard and his potential deployment. Plaintiff informed Mr. Chasteen that deployment was possible, but that he had seen numerous deployments fall through.

19. During this conversation, Plaintiff asked Mr. Chasteen "how does this work if I deploy when I come back?" Mr. Chasteen replied that Plaintiff would have to start over and get hired on again.

20. During March of 2017, Plaintiff learned that the Marine Corps Recruiter had placed him in Active Reserve without his knowledge. Therefore, it would take some time, possibly months, before Plaintiff could switch his enlistment to the National Guard.

21. Throughout the following months, Mr. Chasteen asked Plaintiff, at least once a week if he knew anything more regarding the deployment issue. Plaintiff's response was always, "I don't know. I doubt it happens, though."

22. In April of 2017, a temporary employee who had started working with Defendant 16 days prior to Plaintiff was hired on full time, but Plaintiff remained a temporary employee.

23. On or about May 9, 2017, Plaintiff requested a meeting with Mr. Chasteen regarding his classification as a temporary employee. During this meeting, Mr. Chasteen informed

Plaintiff that he wanted to hire him. In fact, Mr. Chasteen informed Plaintiff that "if it wasn't for not knowing what they were going to do with you, I would have already hired you." Mr. Chasteen told Plaintiff that he was not able to hire him full-time because it would look bad if he hired Plaintiff and then Plaintiff was deployed for a year. When Plaintiff voiced his frustration about his inability to obtain full time employment, Mr. Chasteen responded by stating, "I don't know what you're going to do, no one can really hire you."

24. From May 1, 2017 to May 26, 2017, a group of temporary employees who had begun working with Defendant after Plaintiff was brought on, were hired to full time positions while Plaintiff remained a temporary employee.

25. Since Defendant refused to hire Plaintiff full time, he was forced to leave Port Metal Services to take a job with Natural Evolution. Plaintiff terminated his employment with Defendant at the end of May 2017.

### FIRST CLAIM FOR RELIEF
### (DENIAL OF EMPLOYMENT IN VIOLATION OF 38 U.S.C. § 4311(a))

26. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

27. By and through, but not limited to, the events described above, Plaintiff was denied the right to retain employment with Defendant on the basis of his service.

28. By and through, but not limited to, the actions described above, Defendant violated USERRA, 38 U.S.C.§§ 4301, *et seq*.

29. As a direct and proximate result of said actions by Defendant, Plaintiff has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

30. Defendant's actions were willful and done with reckless indifference to Plaintiff's rights.

31.     Plaintiff has been injured by Defendant's violation of USERRA and is thereby entitled to recover lost wages and benefits in an amount to be determined as well as an equal amount in liquidated damages.  Plaintiff is further entitled to recover his attorney's fees and litigation expenses incurred in prosecuting this matter.

**WHEREFORE**, Plaintiff prays for a declaration that the conduct engaged in by Defendant is in violation of Plaintiff's rights; for an award to Plaintiff for equitable relief of back salary and benefits; liquidated damages in an amount equal thereto; and front pay, all in excess of One Hundred Thousand Dollars($100,000.000); costs and expenses, including reasonable attorney's fees as provided for by applicable law; an assessment of damages to compensate for any tax consequences of this judgment and for any such other legal or equitable relief this Honorable Court deems just and proper.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorney for Plaintiff***